UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
UNICORN CROWDFUNDING, INC. :
:
               Plaintiff, :
: Civil No.:
  v. :
: COMPLAINT
NEW STREET ENTERPRISE, INC. d/b/a :
SOCIAL FIX; OSSIAN VENTURES, :
INC.; and TERESA TATEOSSIAN, :
:
               Defendants. :
---------------------------------------------------------------x

## VERIFIED COMPLAINT

    Plaintiff Unicorn Crowdfunding, Inc., through its undersigned counsel of record, alleges against New Street Enterprise, Inc. d/b/a Social Fix, Ossian Ventures, Inc., and Teresa Tateossian (collectively the "Defendants") as follows:

## PARTIES

    1.    Unicorn Crowdfunding, Inc. ("Unicorn") is a Delaware corporation with its principal places of business in the Northern District of Illinois and the Southern District of New York.

    2.    Defendant New Street Enterprise, Inc. d/b/a Social Fix ("Social Fix") is a New Jersey corporation with its principal place of business in the District of New Jersey.

    3.    Defendant Ossian Ventures, Inc. ("Ossian") is a Wyoming corporation with its principal place of business in the District of New Jersey.

1

4. Upon information and belief, Defendant Teresa Tateossian ("Ms. Tateossian") is an individual residing in the District of New Jersey.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 because the actions described in the Complaint arise under the Lanham Act and present a federal question over which this Court has jurisdiction pursuant to § l338(a).

6. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because Unicorn's state law claims are so related to the federal trademark claims that are within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

7. This Court has personal jurisdiction over Social Fix, Ossian, and Ms. Tateossian because the Defendants knowingly, systematically and continuously transact business and enter into contracts on an ongoing basis within this District. In addition, the Defendants reached into this District to interfere with Unicorn's contract and relationship with Bloomberg LP, whose principal place of business is in this District. The infringement and interference that took place in this District forms the basis of this Complaint.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims forming the basis for the subject of the action took place in this District.

## FACTS

9. Unicorn is a production company that is producing *The Unicorn*, a television show for Bloomberg Television (the "Show"). Unicorn was founded in September 2017.

10. Bloomberg Television is an American-based international cable and satellite business news television channel, owned by Bloomberg L.P. and is distributed globally, reaching over 310 million homes worldwide. It is headquartered in New York City, in this District.

11. The Show will provide Bloomberg audiences with the opportunity to invest into innovative companies by participating in an equity crowdfunding raise.

12. The Show is slated to be a blend of *Shark Tank* meets *American Idol* where each episode will introduce Bloomberg TV audience members to an exciting and innovative company participating in a round of equity crowdfunding.

13. On or about September 28, 2017, Unicorn and Social Fix executed a Memorandum of Understanding to outline a relationship whereby Social Fix would work collaboratively with Unicorn to build a detailed marketing plan.

14. As part of the marketing plan Unicorn and Social Fix collaborated on marketing materials, including the redesign of Unicorn's logo. Social Fix was paid a $5,000 fee for this initial collaboration and related work.

15. In or around March 2018 Unicorn and Bloomberg solidified a business relationship whereby Unicorn would buy substantial airtime on the network and would pay to sponsor various Bloomberg events.

16.     Unicorn officially unveiled the Show at Bloomberg's Equality Summit on May 8, 2018 where Unicorn displayed and used the Unicorn Mark and logo in commerce as the lead sponsor for the event.

17.     Unicorn has since been using the mark in commerce in connection with advertising, casting, and promoting the Show on a nationwide basis.

18.     For example, Unicorn aired a commercial promoting the Show on Bloomberg TV in June and July 2018.

19.     On October 9, 2018, counsel for the Defendants sent a threatening letter terminating its relationship with Unicorn and demanding $1,651,693.04 for "services rendered to date" (the "Demand"). The Demand also included a request that Unicorn "cease and desist" from using any digital content or marketing materials created by Social Fix.

20.     In the year that Social Fix and Unicorn had been working together, Social Fix had never proposed – nor had the parties ever agreed upon – any such fee for the services as set forth in the Demand.  October 9, 2018 marked the first time that Social Fix provided Unicorn with any such invoices.

21.     On October 15, 2018 counsel for Unicorn responded to the Demand explaining that Social Fix had already been paid for its collaboration and assistance in developing the marketing materials, including but not limited to, the Unicorn logo.

22.     On October 25, 2018 counsel for the Defendants sent a responsive letter stating "I do not believe an amicable resolution is possible at this point,

4

unless your client pays its bills in full." This same letter notified Unicorn that Social Fix had fraudulently applied to register The Unicorn trademark with the United States Patent and Trademark Office. The Demand demanded that the total bill of $1,651,693.04 be paid by the very next day, October 26, 2018 at 5:00pm, "or else…" Social Fix would notify Unicorn's business affiliates and take legal action without any further notice.

23. When Defendants' counsel sent this letter, Defendants knew that Unicorn and Bloomberg had an important event taking place in this District on October 30, 2018. Defendants also knew that Unicorn was the sponsor for this October 30, 2018 event.

24. Defendants' threats were a shakedown and attempt to wrestle money from Unicorn by threatening to disrupt and interfere with the October 30, 2018 event.

25. That same day, on October 25, 2018, Counsel for Unicorn responded via email, confirming receipt of the letter, and that a response was forthcoming but could not be prepared in twenty-four hours (Social Fix had taken 10 days to respond to Unicorn's letter). The Defendants' counsel responded that their self-imposed deadline was firm and that they would take action without any further delay.

26. The Defendants made good on their threat by sending baseless cease and desist letters to Unicorn's business affiliates, Bloomberg and Variety, on October 28, 2018. *See* Exhibit A, the "Cease and Desist".

27. The Cease and Desist contains a litany of misrepresentations, including that the Defendants are the owners of the Unicorn trademarks and that Bloomberg or Variety's use of the Unicorn trademarks would be an unauthorized use giving rise to trademark infringement, dilution, unfair competition and other claims, none of which had or have any merit because, among other things, the Defendants have never used the Unicorn trademarks mark in commerce. Furthermore, the Defendants have never had, nor will ever have exclusive rights in the Unicorn trademarks, including but not limited to the right to enforce and police the trademarks.

28. As alluded to above, Defendants were aware that Unicorn was set to be the lead sponsor for a Bloomberg event scheduled for October 30, 2018: *The Future of Crowdfunding*. Unicorn had invested hundreds of hours and substantial sums of money to be the sponsor of this event. During the event, Unicorn's mark was planned to be displayed throughout the day for the entire crowdfunding ecosystem and attendees to see.

29. In the late evening of October 29, 2018, mere hours prior to *The Future of Crowdfunding* event, Bloomberg's legal department directed its team to remove all Unicorn branding from the event space as a direct result of Social Fix's transmission of the Cease and Desist to Bloomberg. In other words, despite spending hundreds of thousands of dollars on its relationship with Bloomberg, Unicorn would not be permitted to display its trademark anywhere in the exhibition space.

30. In addition, Unicorn's relationships with Bloomberg and Variety have been irreparably harmed by Defendants' illegal interference.

31. Unicorn's business reputation has also been irreparably harmed by Defendants' illegal interference.

32. Unicorn brings this cause of action and motion for injunctive relief to enjoin the Defendants from further violating its exclusive trademark rights, and from interfering with its business relationships, since such infringement and interference causes irreparable harm.

### FIRST CAUSE OF ACTION
### Violation of Lanham Act, 15 U.S.C. §1125(a):
### False Designation of Origin, False Description and False Representation
### Against all Defendants

33. Unicorn repeats and re-alleges the allegations contained in paragraphs one (1) through 32 as though fully alleged herein.

34. Unicorn is the owner of the Unicorn trademarks which includes the word mark THE UNICORN and the design mark: [THE UNICORN logo] (collectively the "UNICORN Mark").

35. Unicorn's exclusive rights in the UNICORN Mark are superior to any rights that the Defendants may claim in and to the UNICORN Mark.

36. The Defendants' unauthorized use of the UNICORN Mark, directed and controlled by Ms. Tateossian, constitutes a false designation of origin, a false or misleading description of fact, and a false or misleading representation of fact

7

suggesting that the Defendants' services originate with, are sponsored by, or are approved by, Unicorn, or that the Defendants and its services are affiliated with, connected to, or associated with Unicorn.

37. The Defendants' unlawful conduct constitutes a violation of § 43(a) of the Lanham Act 15 U.S.C. § 1125(a).

38. As a result of the Defendants' unlawful and willful acts, Unicorn has suffered, and continues to suffer, irreparable injury for which no adequate remedy at law exists.

## SECOND CAUSE OF ACTION
### Deceptive Acts and Practices Under New York State Law
### Against Defendants Social Fix, Ossian, and Ms. Tateossian

39. Unicorn repeats and re-alleges the allegations contained in paragraphs one (1) through 32 as though fully alleged herein.

40. The Defendants' use of the UNICORN Mark, such use being directed and controlled by Ms. Tateossian, constitutes deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349, and will continue to do so unless the Defendants are enjoined.

41. Upon information and belief, the aforementioned actions and conduct of the Defendants have been committed willfully and knowingly.

42. As a result of the Defendants' unlawful and willful acts, Unicorn has suffered, and continues to suffer, irreparable injury for which no adequate remedy at law exists.

## THIRD CAUSE OF ACTION
### Tortious Interference with Prospective Business Relations Against Defendants Social Fix and Ossian

43. Unicorn repeats and realleges the allegations contained in paragraphs one (1) through 32 as though fully alleged herein.

44. As alleged herein, Unicorn and Bloomberg have a substantial business relationship whereby Unicorn is a lead sponsor for various Bloomberg events and The Show is being exclusively produced for Bloomberg TV.

45. The Defendants' October 28, 2018 Cease and Desist interfered with Unicorn's relationship with Bloomberg.

46. The Defendants' sole purpose of its October 28, 2018 Cease and Desist, which contained false and fraudulent information, was to harm Unicorn's relationship with Bloomberg and intentionally inflict harm on Unicorn's business reputation.

47. As a result of the Defendants' conduct, Unicorn's relationship with Bloomberg has been irreparably damaged. Specifically, Bloomberg has called into question Unicorn's ownership of its brand and its ability to do sound business. Moreover, Bloomberg removed all Unicorn branding from the exhibition space for the October 30, 2018 event. Bloomberg's acts reflect the damage sustained by Unicorn as a result of the Defendants' transmission of the Cease and Desist letter to Bloomberg.

## **PRAYER FOR RELIEF**

WHEREFORE, Unicorn respectfully requests that this Court enter judgment in favor of Unicorn Crowdfunding, Inc. and against the Defendants in the following:

(a) Temporarily and permanently enjoining the Defendants from:

   (i) using and/or claiming ownership in the UNICORN Mark, as well as any name or mark, or colorable imitation thereof;

   (ii) continuing acts of false designation of origin or unfair trade practices that may cause the Defendants' services to be mistaken for, confused with, or passed off as, Unicorn's services; and

   (iii) otherwise infringing the UNICORN Mark.

(b) Requiring the Defendants to remove the UNICORN Mark, and any confusingly similar or substantially similar name or mark, from its website(s), HTML code, search engine query terms and any other electronic communications hosts, links and devices;

(c) Ordering the Defendants to pay costs of this action, including attorneys' costs and fees, incurred by Unicorn in connection with Defendants' acts of false designation of origin, false description and false representation, infringement, unfair competition, and deceptive acts and practices;

(d) Directing the Defendants to file with this Court and to serve on Unicorn within ten (10) days after issuance of an injunction, a report in writing, under oath, setting forth in detail the manner and form in which the Defendants have complied with the injunction;

(e) Enjoining the Defendants from further tortiously interfering with Unicorn's business partners, including but not limited to Bloomberg and Variety;

(f) An order requiring the Defendants to expressly abandon the fraudulent trademark application filed with the United States Patent Office for THE UNICORN (Serial No. 88140882);

(g) Any other relief that this Court deems necessary to maintain the status quo; and;

(h) For any other relief this Court deems just and proper.

Dated: October 31, 2018                     JAYARAM LAW, INC.

                                            By: /s/ Wendy Heilbut

                                            Wendy Heilbut
                                            142 West 57th Street, 11th Floor
                                            New York, NY 10019
                                            Phone: 646.596.1322
                                            Email: wendy@jayaramlaw.com

                                            Vivek Jayaram (*pro hac vice*
                                            forthcoming)
                                            125 S. Clark Street, Suite 1175
                                            Chicago, IL 60603
                                            Phone: 312-212-8676
                                            Email: vivek@jayaramlaw.com

## **VERIFICATION**

I, Brian Bodik, on behalf of Unicorn Crowdfunding, Inc., verify under penalty of perjury that I have read the above complaint and its contents. I also verify that, to the best of my knowledge and recollection, the matters stated in the complaint are true and correct.

Executed this 31st day of October, 2018

*Brian Bodik* (DocuSigned by: E2B76F46C5F3431...)

Brian Bodik, Co-Founder